UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

EDWARD L. GIBBS, II,

                              Debtor.

Chapter 13

Case No: 25-23077 (DSJ)

## OPINION GRANTING DEBTOR'S MOTION TO SELL PROPERTY FREE AND CLEAR PURSUANT TO 11 U.S.C. 363(B) AND (F)(5)

**APPEARANCES:**

PENACHIO MALARA, LLP
*Counsel for the Debtor*
245 Maine Street – Suite 450
White Plains, New York 10601
By:     Anne Penachio

CHAPTER 13 STANDING TRUSTEE
399 Knollwood Road, Suite 102
White Plains, New York 10603
By:     Thomas C. Frost

LOGS LEGAL GROUP LLP
*Counsel for JPMorgan Chase Bank, N.A.*
175 Mile Crossing Boulevard
Rochester, New York 14624
By:     Robert W. Griswold

ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC
*Counsel for U.S. Bank Trust N.A.*
900 Merchants Concourse, Suite 310
Westbury, New York 11590
By:     Michael L. Carey

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtor's amended motion to sell property free and clear of liens

under 11 U.S.C. § 363(b) and (f) (the "Sale Motion" or "Sale Mot.") [ECF No. 27], which seeks

Court approval to sell the Debtor's residence located at 623 Willow Street, Mamaroneck, New

1

York 10543 (the "Property") to Jenna Catalon and Jack Coffey (together, the "Buyers"). The Debtor also filed a reply affirmation of Debtor's real estate broker, Gina Ann Perriello (the "Perriello Aff.") [ECF No. 30] in support of the Sale Motion. The Debtor contends that the Chapter 13 petition, which stayed a pending foreclosure sale, allowed the Debtor to "properly effectuate" the proposed sale and "preserve equity in [the Property] for the benefit of the Debtor and all creditors." Sale Mot. ¶¶ 18-19.

JP Morgan Chase Bank, N.A. ("Chase"), a junior lienholder of the Property, filed opposition to the Sale Motion (the "Sale Mot. Obj.") [ECF No. 28]. Chase broadly contends that the Debtor failed to establish any basis for a sale free and clear of Chase's lien under Section 363(f)(3) or (f)(5) and requests that the Court enter an order denying the Sale Motion. U.S. Bank National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust ("U.S. Bank"), the senior lienholder, does not object to the Sale Motion as it expects to be paid in full from proceeds of the proposed sale. *See* U.S. Bank Response ¶ 4 [ECF No. 29].

The Court conducted a hearing on April 15, 2026, with counsel for the Debtor, the Chapter 13 Trustee, Chase, and U.S. Bank attending and being heard. The Court reserved decision.

## BACKGROUND

This Opinion provides only such background as is pertinent to this decision. U.S. Bank holds a senior mortgage lien against the Property. U.S. Bank asserts a secured claim in the amount of not less than $373,480.75, *see* Proof of Claim No. 4-1, with an estimated payoff balance of approximately $386,360.49 as of March 2, 2026. *See* U.S. Bank Response ¶ 3. Chase holds a junior mortgage lien against the Property and filed Proof of Claim No. 3 asserting a

2

secured claim of not less than $225,296.75, with an approximate payoff amount of $249,439.36 as of March 2, 2026. Together, the mortgage debt asserted by these two secured creditors substantially encumbers the Property.

The Debtor commenced this Chapter 13 case on November 10, 2025. *See* ECF No. 1. The Debtor's petition automatically stayed and thus prevented a scheduled foreclosure sale that had been scheduled for December 2025. *See JPMorgan Chase Bank, N.A. v. Gibbs*, Index No. 64823/2022 (Westchester Cnty. Sup. Ct.) [NYSCEF Dkt. No. 79]. Thereafter, the Debtor sought authority to market and sell the Property. The Court approved the retention of Deluca Realty Group Inc. as the Debtor's real estate broker on January 5, 2026 [ECF No. 24], and separately approved the retention of John M. Crane, Esq. as special counsel [ECF No. 26]. According to the Debtor, the broker thereafter actively marketed the Property and ultimately procured the Buyers. *See* Sale Mot. ¶ 8; Perriello Aff. ¶¶ 7, 9-10.

The Debtor and the Buyers had previously entered into a contract of sale dated September 25, 2025. *See* Sale Mot., Ex. C [ECF No. 27-3]. The Debtor has now moved for approval of a sale of the Property for $617,000. The contract of sale provides for a deposit of $61,700, with the balance due at closing. The contract also contains a financing contingency requiring the purchaser to obtain mortgage financing in an amount not to exceed $434,000. In addition, the agreement requires that the Property be maintained in substantially its present condition pending closing, including that the roof remain free of leaks, the basement free of standing water, and the air-conditioning, sewage, and electrical systems in working order. The Debtor also delivered a Property Condition Disclosure Statement pursuant to New York Real Property Law § 462. *See* Sale Mot. ¶¶ 10-11.

The evidentiary record reflects substantial efforts to expose the Property to the market. The Home had been marketed on and off through the Multiple Listing Service for approximately four years. During that period, the broker conducted approximately thirty-two open houses and thirty-six private showings, posted signage in numerous locations, circulated mailings and flyers, issued repeated email solicitations including to investor contacts, and advertised the Property through social media platforms and various real-estate websites, including Zillow, Homes.com, MLS, and the broker's own website. *See* Perriello Aff. ¶¶ 4, 9-11.

The broker further explained that the Property presented significant marketing challenges. The Home is approximately one hundred years old, located in a mixed-use neighborhood containing residential, commercial, and industrial uses, and was described as being in poor structural and cosmetic condition, *i.e.*, not "move-in ready." *See id.* ¶¶ 5, 8. The record also indicates that the Property had been subject to municipal violations, which required attention, inspections, and efforts to obtain certificates of occupancy before a sale could proceed. *See id.* ¶ 6.

Notwithstanding these marketing efforts, no offers superior to the presently proposed transaction were received. Several lower offers were made, and one prospective purchaser withdrew after contract negotiations had progressed. The broker attributed much of the resistance in the market to the condition of the Property. In the broker's professional judgment, the present transaction represents the highest and best offer obtained after extended marketing efforts. *See id.* ¶¶ 12, 15.

Against that backdrop, the Debtor contends that the proposed sale represents the most efficient means of monetizing the Property and maximizing value for the estate and creditors.

**JURISDICTION**

4

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### A. Standards Governing Free and Clear Non-Ordinary-Course Sales Under Code Sections 363(b)(1) and 363(f)

Section 363(b)(1) provides that, after notice and a hearing, a Debtor may sell property of the estate other than in the ordinary course of business. *See* 11 U.S.C. § 363(b)(1). The standard governing approval of a sale outside the ordinary course is whether the proposed transaction serves the best interests of the estate. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1068–69 (2d Cir. 1983). To satisfy that standard, the debtor must articulate a sound business justification for the sale. *Id.* at 1070. In evaluating whether that burden has been met, courts consider, among other things, the time elapsed since the commencement of the case, the relationship between the proposed sale price and the value of the property, and whether the asset is appreciating or declining in value. *See In re Oneida Lake Dev., Inc.*, 114 B.R. 353, 355–56 (Bankr. N.D.N.Y. 1990). In addition, Section 363(f) permits a sale free and clear of liens and other interests only if one of the statute's enumerated conditions is satisfied, as follows:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

5

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

### B.  The Sale Meets the Requirements of Section 363(b)(1)

Debtor has amply demonstrated the reasonableness of its business judgment and the benefit to the estate that will result from the proposed sale, thus satisfying Section 363(b)(1). As noted, the property's condition and location present a number of challenges to marketability, and unchallenged evidence shows that the house was marketed for approximately four years, including by a qualified broker who was appointed with Court approval in January 2026. *See* ECF No. 24. Despite long-running efforts, no better or higher offer appeared. The property is in contract and the Court fully credits the broker's and Debtor's view that the proposed transaction represents the best and highest reasonably achievable outcome for the estate.

### C.  A Sale Free and Clear Is Authorized Under Section 363(f)(5) (Although Not Under Section 363(f)(3))

Chase's objection principally argues that the Debtor has failed to establish any basis for a sale free and clear of Chase's lien.

The Court agrees with Chase that Section 363(f)(3) is not satisfied because the sales proceeds will not be "greater than" the value of Chase's lien. Rather, in the best of circumstances and recognizing that undersecured claims are split into secured and unsecured deficiency claims, the sale might realize proceeds *equal* to the value of Chase's liens, but not "greater than" that

value. See *In re Flour City Bagels, LLC*, 557 B.R. 53, 88 (Bankr. W.D.N.Y. 2016) (holding that Section 363(f)(3) "does not authorize a sale, free and clear of liens, if the price for which the property is to be sold is equal to or less than the aggregate amount of all claims held by creditors with liens in the property being sold").

However, the proposed sale does meet the requirements of Section 363(f)(5), and thus the proposed free and clear sale is approved.

Chase notes that courts have recognized two competing interpretations of section 363(f)(5): a broad reading under which any hypothetical proceeding by any actor that could compel acceptance of money would suffice, and a narrower reading under which the debtor or trustee itself must possess the legal ability to compel the lienholder to accept a monetary satisfaction. Chase contends that the broader view renders the statute effectively limitless and superfluous, whereas the narrower approach, articulated by *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 710–11 (S.D.N.Y. 2014), has been adopted by the weight of authority. *See* Sale Mot. Obj. ¶¶ 55–58. Applying that standard here, Chase argues that the Debtor plainly cannot foreclose Chase's mortgage or otherwise compel Chase to accept less than full payment, therefore rendering Section 363(f)(5) unavailable. *See id.* ¶ 59. Chase further contends that the Debtor's reliance on *In re Urban Commons 2 W. LLC*, 668 B.R. 42 (Bankr. S.D.N.Y. 2025), is misplaced because that case did not embrace the broad interpretation urged by the Debtor and instead arose in materially different circumstances involving a consensual sale in which junior out-of-the-money interests threatened to obstruct value-maximizing relief. *See* Sale Mot. Obj. ¶¶ 60–62. By contrast, Chase asserts, as an "in the money" secured creditor, its recovery may be impaired by delay, fees, and a "potentially below-market value transaction" without leaving adequate procedural protection for its lien. *See id.* ¶¶ 63–67.

7

Having canvassed the at-times conflicting authority regarding Section 363(f), the Court rejects Chase's attempt to cabin or distinguish *Urban Commons*, and, further, rejects Chase's contention that the narrow reading espoused by *Dishi* should control here. The reasons for this conclusion and for the Court's approval of a sale free and clear are detailed in the succeeding paragraphs, but first, the Court notes that it is not ruling out the possibility that in a future case it might be persuaded to follow even the broader-still construction applied by earlier cases. The Court need not decide that question because, even applying the "middle-ground construction" that *Urban Commons* employed, a free and clear sale is authorized in the circumstances of this case.

A number of cases before *Dishi* applied a broad reading of Section 365(f)(5), positing that the authorization of sales where the lien holder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest" applies whenever any hypothetical proceeding could generate a mandated money satisfaction. *See, e.g.*, *In re Bos. Generating*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010).

*Urban Commons*, decided last year, gave a searching reexamination of the issue, and declined to follow *Dishi* as contrary to the statutory text for reasons detailed below and as incorrectly concluding that a contrary reading made other subsections of Section 363(f) mere surplusage. *Urban Commons* instead adopted what it termed a "middle-ground construction" that it deemed "more consistent with the text and purposes of [S]ection 363(f)(5)," *Urb. Commons*, 668 B.R. at 48, because (1) the overly broad interpretation that would allow Section 363(f)(5) to be triggered by a hypothetical eminent domain proceeding would indeed render the other subsections of Section 363(f) "mere surplusage," *id.*, but (2) the overly narrow interpretation put forth by *Dishi* where only "'the trustee, as owner of the property'—as distinct from a creditor—

8

'could compel the interest holder to accept a money satisfaction for its interest'" nullifies subsection (f)(5). *Id.* at 47 (quoting *Dishi*, 510 B.R. at 710).

As noted by *Urban Commons*, not all property interests are susceptible to extinguishment through proceedings that compel monetary satisfaction; for example, easements, covenants running with the land, and certain tenant protections may survive foreclosure and therefore require satisfaction of other subsections, such as consent or bona fide dispute. *See id.* at 48–49 (citing *Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994); *Silverman v. Ankari (In re Oyster Bay Cove, Ltd.)*, 196 B.R. 251, 255–56 (E.D.N.Y. 1996)). *Urban Commons* further observed that the text of Section 363(f)(5)—written in the passive voice—does not limit the identity of the party who could compel acceptance of a monetary satisfaction, such that the statutory text does not support a reading that confines the provision solely to actions brought by the debtor or trustee. *Id.* at 49. Finally, the decision emphasized that interpreting section 363(f)(5) to encompass proceedings such as foreclosure and UCC sales aligns with the Bankruptcy Code's broader structure and its reliance on state law remedies, reflecting Congress's intent that bankruptcy sales may extinguish those interests that could be eliminated through comparable nonbankruptcy processes. *Id.*

Chase asserts that it is an "in the money" secured creditor whose claim risks being reduced by closing costs and fees, but it is only secured "to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest." 11 U.S.C. § 506(a)(1). In other words, Section 506(a)(1) bifurcates Chase's claim into "a secured claim, equal to the value of the creditor's interest in its collateral, and an unsecured claim for the balance." *Urb. Commons*, 668 B.R. at 50 (citing 11 U.S.C. § 506(a)(1)). Section 506(a)(1) states that the value of the property is to be

9

determined "in light . . . of the proposed disposition or use of such property." 11 U.S.C. §

506(a)(1). In this case, the "proposed disposition" refers to the proposed sale of the Property.

Chase complains that the proposed "potentially below-market value transaction," Sale Mot. Obj.

¶ 63, will materially prejudice the value of its lien, but Chase produced no evidence, either in its

objection or at the April 15 hearing, to rebut the Debtor's contention that proposed purchase

price represents the highest and best offer received after a long and energetic marketing process,

or that the proposed purchase price is below "market value," or that a foreclosure would

somehow produce a greater purchase price. Indeed, given the Property's age, structural and

cosmetic issues, location in a mixed residential and industrial neighborhood, and history of

municipal violations requiring pre-marketing remediation all buttress the Debtor's contention

that the purchase price is the highest and best offer it could have received in the circumstances.

*See* Perriello Aff. ¶¶ 5-6, 12, 15. As noted above, the Court fully credits Debtor's showing (and

thus rejects Chase's non-evidence-backed criticisms): the Debtor has made a clearly reasonable

business judgment that the proposed sale is in the best interest of creditors and the estate, and

achieves the best possible recovery after four years of marketing efforts despite many challenges

associated with the property.

In sum, the value of estate property to be sold is less than the face amount of the liens that

encumber it and the Court concludes that the existence of a foreclosure remedy under applicable

state law satisfies Section 363(f)(5). The Debtor is therefore authorized under Sections 363(b)

and (f)(5) to sell the Property free and clear of all liens and encumbrances. Upon the closing of

the sale, the unsecured portion of Chase's lien shall be extinguished, and Chase shall have an

unsecured deficiency claim for the remainder.

**CONCLUSION**

10

For the foregoing reasons, the Sale Motion is granted and Chase's objection is overruled. The Debtor is to email a proposed order effectuating and memorializing this ruling to chambers on notice to Chase's counsel. Chase's time to appeal will begin to run upon entry of such an order.

IT IS SO ORDERED.


Dated: New York, New York
         May 7, 2026

                                         _____*s/ David S. Jones*_____
                                         Honorable David S. Jones
                                         United States Bankruptcy Judge